**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

DONALD E. CONKLIN, M.D.,

    Plaintiff,

vs.                                               CASE NO. CV-11-J-1121-NW

MEDICAL ASSOCIATES OF THE
SHOALS, P.C.,

    Defendant.

**MEMORANDUM OPINION**

Pending before the court is the defendant's motion for summary judgment (doc. 19), a brief and evidence in support of said motion (doc. 21), to which the plaintiff filed a response (docs. 23 and 24) and the defendant thereafter filed a reply (doc. 25). Having considered said motion, response, reply, and all pleadings and evidence filed to date, the court finds as follows:

**FACTUAL BACKGROUND**

The plaintiff filed a complaint claiming Breach of Agreement (Count I), Intentional Interference with Business Relationship (Count II), Slander (Count III), Fraud (Count IV), and Intentional Infliction of Emotional Distress (Count V), all arising out of his employment with defendant.

The plaintiff, a medical doctor began employment with the defendant on November 21, 2005. Affidavit of Dr. Randy M. Pounders, ¶ 6. Defendant asserts

patients, office staff, clinical staff, and other doctors complained about plaintiff's manner. *Id.* In March 2007, the physicians of defendant met with plaintiff to address these complaints and recommended plaintiff attend a four day course entitled "Help for the Healers." *Id.,* ¶ 7. Plaintiff did so, but his conflicts with patients and staff continued, resulting in patients leaving the defendant practice. *Id.,* ¶¶ 7-8.

Plaintiff resigned his employment with defendant in May 2010. Pounders affidavit, ¶ 8. He entered a Separation Agreement and Release that governed the terms of his resignation. *Id.,* ¶ 9. That same month, the plaintiff began work with a family practice physician, but shortly thereafter accepted employment in Texas. Complaint, ¶¶ 41, 43. He applied for a medical license with the Texas Medical Board ("the Board"), which subsequently began an investigation of plaintiff's background. Plaintiff depo. at 119; 266, Pounders affidavit, ¶ 10. Plaintiff also requested defendant complete an evaluation form for this purpose. Pounders affidavit, ¶ 10. The evaluation form, signed by plaintiff, contains language authorizing the release of information for the purpose of providing the same to the Texas Medical Board. *See* Evaluation Form L, submitted as exhibit 2 to Pounders affidavit and plaintiff exhibit E.

The defendant provided the requested information, after which the Board requested both clarification and an unabridged copy of plaintiff's staff file from

defendant. Pounders affidavit, ¶¶ 12-13. The request sought evaluations, credentialing information, documentation related to complaints and more information concerning plaintiff's referral to "Help for the Healer." *Id.*, ¶ 13; *see also* exhibit 4 to Pounders affidavit. Before providing this information, the defendant received a more extensive release from the plaintiff.[1] *See* Pounder's affidavit, ¶¶ 14-15; and exhibits 5 and 6 thereto. Defendant then provided, *inter alia*, a list of complaints received concerning the plaintiff. Plaintiff exhibit B, at 000004-000013.

Since receiving this information, the Board recommended the plaintiff receive a full medical license, but plaintiff has declined to accept that recommendation because it was conditioned on continuing medical education and a $2,000.00 fine. Plaintiff depo. at 355-356, 392. The Board sought the fine for plaintiff's alleged failure to correctly respond to several questions on his application for licensure in

---

[1] That release states in full:
I, Donald E. Conklin, MD (applicant name), hereby authorize Medical Associates of the Shoals, 203 Avalon Ave, Suite 130, Muscle Shoals, AL 35661 (institution and location), and all affiliated hospitals, institutions or organizations, my references, personal physicians, employees (past, present and future), business or professional associates (past, present and future) to release to the Texas Medical Board or his successors any information, files or records, including staff and/or credential records, medical records, educational records, and records of psychiatric treatment and treatment for drug and/or alcohol abuse or dependency, requested by the Board in connection with this application, necessary to determine my medical competence, professional conduct, or physical and/or mental ability to safely engage in the practice of medicine.

(Signed and dated January 11, 2011).

Plaintiff exhibit B, at 000003

Texas, although the plaintiff asserts he did answer the questions appropriately. Plaintiff depo. at 392; defendant exhibit D at Conklin 111-112;defendant exhibit E at Conklin 163-Conklin 165; defendant exhibit F (Texas Medical Board recommendation, dated June 6, 2011).   Plaintiff blames these requirements on the information defendant supplied to the Board, alleging the same to be false.  Conklin depo. at 356.

The plaintiff received a temporary license to practice medicine in Texas in April 2011.  Plaintiff depo. at 400.  The plaintiff alleged in his complaint that due to the actions of defendant, he could not been able to begin work because his medical license in Texas has been delayed (complaint, ¶ 52), but admitted in his deposition that he received a temporary license which provided him with full rights to practice medicine in Texas, and further agrees that the Board recommended he receive full licensure.  Plaintiff depo. at 354.

The plaintiff asserts that the information provided the Texas Medical Board was intentionally false and misleading, and not a proper representation of the events in question.  *See e.g.,* defendant exhibit G.  The plaintiff offered Teresa Holland's deposition testimony in an attempt to demonstrate the falsity of the defendant's responses to the Board.   Holland was the office manager of defendant during all times relevant, and actually provided some of the records in question to the Board.

4

Holland testified that the plaintiff's assertion he was only told about one specific patient complaint is an absolute untruth. Holland depo. at 33. In fact, in his own deposition, the plaintiff admitted that he was informed about other complaints, but never asked her which patients were unhappy with him. Conklin depo. at 331.

Holland testified that she tracked all the complaints about the plaintiff. Holland depo. at 33. While she did not disclose to the plaintiff that she was keeping these complaints in spreadsheet form, she did tell him about the complaints themselves. *Id.*, at 34. The spreadsheet was not kept in plaintiff's personnel file because the purpose of it was to track trends, to try to determine if there were triggers for plaintiff's poor behavior in order to come up with an improvement plan, and not to ultimately report to anyone else. *Id.,* at 35-36, 44, 53. The complaints referenced were either made to her personally, or to the nursing staff, the clinical staff or the front office manager. *Id.* at 41-42. When accused of keeping such a log solely for purposes injuring plaintiff and keeping him from being licensed in Texas., Holland denied any such purpose. *Id.*, at 45.

Holland testified her understanding was that the Texas Board requested information centered around complaints that had been alleged by patients regarding

5

the plaintiff, so she sent the spreadsheet she had created.[2]  Holland depo. at 51, 70-71. Specifically, she noted that the Texas Medical Board sought unabridged copies. Holland depo. at 82. Although the plaintiff refers to the information sent by Holland to the Texas Medical Board as "malicious" in his response, the plaintiff agrees that he was informed of staff and patient complaints. Conklin depo. at 204. He agrees that the other doctors offered their assistance and help. Conklin depo. at 205.

---

[2]Plaintiff's representations otherwise concerning Holland's statements at ¶¶ 9 and 10, plaintiff's response in opposition, are simply untrue, and wholly unrepresentative of the testimony before the court. Specifically, the plaintiff asserts that "As shown in Teresa Holland's deposition, Ms. Holland created the slanderous chart due to her own personal vendetta against Dr. Conklin. *Id.,* at 52:18-53:1." *Id.*, ¶ 10. Those deposition references reflect testimony as follows:

> Q. Why didn't you add what you knew about the circumstances of this, that is, that this woman was seriously ill with many different conditions and he needed to see her earlier in the day? Why didn't you add that to be fair to him?
> A. I couldn't say.
> ...
> A. I think that I was fair to Dr. Conklin.

Similarly, in plaintiff's response at ¶ 9, the plaintiff represents that the chart in question showed that 90 patients transferred out of plaintiff's service because of their interactions with him, and that the defendant "knew this information to be false when it submitted it to the Board. (See Holland Depo, Ex. C, at 65:13-66:6)." The referenced citation reflects the following testimony:

> Q. Well, but you don't know why they were leaving the practice?
> A. That is correct.
> Q. And would you agree with me at the top of this spreadsheet that was sent to the Texas Medical Board it says complaint, does it not?
> A. It does.
> Q. And underneath that it talks about the patient name and where they transferred to, does it not?
> A. It does.
> Q. And did you make any effort to have anybody on your staff call these people after they left and ask them why they transferred?
> A. No.

The plaintiff disputes that the doctors recommended to him that he contact a psychiatrist, instead asserting that Dr. Pounders had said "you don't need a psychological evaluation" in the context that the plaintiff should attend the Help for the Healers course. Conklin depo. at 207-208. The plaintiff also disputes that he should have informed the Texas Medical Board that he was counseled by Dr. Pounders, and that Dr. Pounders' statement to the Board that the plaintiff was counseled regarding interpersonal relationships with patients and non-physician staff was an inaccurate statement. Conklin depo. at 337.

Holland agreed that nothing in the records she sent to the Board reflected that the plaintiff was ever reprimanded or put on probation. Holland depo. at 84-85. As Holland explained, the reprimand was documented for internal purposes but left out of the plaintiff's personnel file so that it would not be reportable. *Id.* at 92. However, Dr. Pounders, another doctor at defendant practice, informed the Board of the reprimand. *Id.*, at 85-86, 96; plaintiff exhibit E. In response to specific questions, Dr. Pounders noted that while the plaintiff's professional skills were excellent, he had been reprimanded and "counseled regarding interpersonal relationships."[3] Holland

---

[3] In completing "Form L Physician Licensure Evaluation" as requested by plaintiff, Dr. Pounders checked "yes" to the question "To your knowledge, has the applicant ever: ... been placed on probation, asked to withdraw or reprimanded." Following instructions which requested further information if "yes" was checked, Dr. Pounders wrote "Counseled regarding interpersonal relationships with patients and non-physician staff. Sent to 'Help for the Healer'. This was not an issue with known substance abuse. No clinical issues were involved." Plaintiff exhibit E.

depo. at 96; plaintiff exhibit E. When asked about Dr. Pounders, the plaintiff testified that Dr. Pounders was "very willing to help out" with getting the information the Board had requested to them. Conklin depo. at 298.

In January 2011, the Board informed the plaintiff that a copy of his entire staff file from defendant was required.[4] Conklin depo. at 299. He told the Board that the information requested was being sent by defendant. *Id.,* at 308. The plaintiff was supposed to have begun working at PNS by then, but agreed there was never any guarantee as to how long the licensure process would take. *Id.*, at 299-300. However, he was employed as planned by PNS. *Id.*, at 387.

## II. SUMMARY JUDGMENT STANDARDS

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about

---

[4]In conjunction with this request, the plaintiff signed the release set forth in full at footnote 1, *supra*.

the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party

for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

### III. LEGAL ANALYSIS

Based on the above facts, the plaintiff asserts that the defendant committed a variety of torts. The defendant responds that each of the plaintiff's claims fails as a matter of law. Because each of the plaintiff's claims arise out of the information provided to the Texas Medical Board by the defendant, the court addresses the nature of that information first.

Although the defendant asserts it is entitled to immunity in a variety of forms, its first argument relies on common law absolute judicial/quasi-judicial immunity and statutory immunity. Defendant's brief at 12-13. Although the plaintiff responds to other forms of immunity alleged by the defendant, he wholly failed to address common law absolute judicial/quasi-judicial immunity. Having considered its applicability, the court finds such immunity dispositive of the facts before it, and therefore declines to go through the academic exercise of addressing every type of immunity raised by the parties.

Specifically, the defendant asserts that it is entitled to common law absolute judicial/quasi-judicial immunity. *See* defendant's brief, at 12. If applicable, the same provides the defendant absolute immunity for communications made in court or in quasi-judicial proceedings. Just as judges acting in their judicial function are accorded absolute immunity from suit, *see Cleavinger v. Saxner*, 474 U.S. 193, 199, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), quasi-judicial immunity may be extended to those administrative or executive officials who perform functions closely associated with the judicial process. *Id.* at 200; *Butz v. Economou*, 438 U.S. 478, 508-512 (1978). Such immunity has been extended to state medical boards. *See Watts v. Burkhart*, 978 F.2d 269 (6th Cir.1992); *Bettencourt v. Board of Registration in Medicine*, 904 F.2d 772, 784 n.15 (1st Cir.1990); *Horwitz v. State Bd. of Medical Examiners*, 822 F.2d 1508 (10th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987) (absolute immunity applied where the defendant board members suspended the plaintiff doctor's license). *See also Mooneyham v. State Bd. Of Chiropractic Examiners*, 802 So.2d 200 (Ala.2001)(finding quasi-judicial immunity applied to proceedings of Board of Chiropractic Examiners).

Finding that absolute immunity exists for the proceedings of a medical board, the issue before this court is whether such immunity extends to those professionals providing information to a quasi-judicial board. Under Alabama law, the issue,

11

"[w]hether a communication is privileged by reason of its character or the occasion on which it was made is a question of law for the judge." *Webster v. Byrd*, 494 So.2d 31, 34 (Ala.1986). It is well settled that "an absolute privilege attaches to communications made in the course of quasi-judicial proceedings." *Sullivan v. Smith*, 925 So.2d 972, 974 (Ala.Civ.App.2005); citing *Webster*, 494 So.2d at 34.

In *Webster*, the Alabama Supreme Court opined that "'the availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives.'" *Webster*, 494 So.2d at 35. Furthermore, "the absolute privilege is 'for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages.'" *Webster*, 494 So.2d at 35 (quoting *O'Barr v. Feist*, 296 So.2d 152, 156 (Ala.1974)). *See also Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983) ("The same is true for witnesses .... Witnesses are 'integral parts of the judicial process' and, accordingly, are shielded by absolute immunity. "These policy considerations apply equally to judicial and to quasi-judicial proceedings." *Webster*, 494 So.2d at 35. Clearly, the fitness of a doctor to practice medicine is within the confines of *Webster*.

As noted by the Supreme Court, "[t]he loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus. Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913 (U.S.N.Y.,1978), citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct., 1213, 1217 (1967).

Applying the above law to the facts of this case, the court finds that the documentation and statements provided to the Texas Medical Board by the defendant were for the purposes of a quasi-judicial proceeding and, therefore, are entitled to absolute immunity.

As a practical matter, the defendant provided truthful information when it informed the Texas Medical Board that the plaintiff attended a seminar entitled "Help for the Healer." The impetus for why the plaintiff attended is disputed by the parties, but not capable of being proved or disproved. Similarly, whether the plaintiff had trouble with "interpersonal relationships" with staff members and patients is a matter of perception and not capable of being proved or disproved. Statements which are expressions of opinion concerning plaintiff's professional abilities are not

defamatory. *See e.g., Board of Com'rs of Effingham County v. Farmer*, 493 S.E.2d 21, 27-28 (Ga.App.,1997).[5]

It is elementary that the court must, as a threshhold consideration, make a determination whether a statement is reasonably subject to a defamatory interpretation. *Valentine v. CBS, Inc.*, 698 F.2d 430, 432 (11th Cir.1983); *Silvester v. American Broadcasting Co.*, 650 F.Supp. 766, 770 (S.D.Fla.1986). Statements which are expressions of opinion concerning plaintiff's professional abilities are not defamatory. As with the fact that plaintiff attended a conference called "Help for the Healers," the statement that patients left the defendant's medical practice while plaintiff was still employed by it is undisputed. Rather, the plaintiff disputes only why they left.

---

[5]The Georgia Court stated:

"The expression of opinion on matters with respect to which reasonable men might entertain differing opinions is not slanderous. The relative abilities of [a county administrator] is patently such a matter, wholly subjective and not capable of proof or disproof. [Cross-appellees] here are entitled to express such opinions. An assertion that cannot be proved false cannot be held slanderous. A speaker cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be." (Citations and punctuation omitted.) *Elder v. Cardoso*, 205 Ga.App. 144, 145(1), 421 S.E.2d 753. Moreover, the mere fact that one of the commissioners statements to the effect that Farmer was hurting the county as a whole, was made to a newspaper under unestablished circumstances does not change this rule. Not only are commissioners expected to publicly account for their official actions, the statement itself clearly was not capable either of being proved or disproved. *Compare Fuhrman, supra; Elder, supra; Bergen v. Martindale-Hubbell, Inc.*, 176 Ga.App. 745, 337 S.E.2d 770. The trial court did not err in granting cross-appellees' motion for summary judgment as to the slander claims.

*Board of Com'rs of Effingham County*, 493 S.E.2d at 27-28.

14

Finding quasi-judicial immunity dispositive of the matter before it, the court does not reach the other grounds defendant set forth in its motion for summary judgment, other than to note the plaintiff signed a release so that the defendant would provide the very information about which he now complains. In essence, the plaintiff wanted the defendant to respond to the Texas Medical Board, but now complains because he does not like the response defendant gave.

## CONCLUSION

Having considered the foregoing, the court finds that there are no genuine issues of material fact remaining in the case and that the defendant is entitled to judgment in its favor and against the plaintiff on all counts of the plaintiff's complaint. The court shall therefore grant the defendant's motion for summary judgment by separate Order.

**DONE** and **ORDERED** this the 1st day of February, 2012.

*(signature)*

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE